In the Supreme Court of Georgia

Decided:   October 5, 2015

S15A0853.  DILLARD v. THE STATE.

THOMPSON, Chief Justice.

Appellant Leonard Dillard was convicted of malice murder.[1]  He appeals, asserting, inter alia, he was denied his constitutional right to a speedy trial. Finding no reversible error, we affirm.

Appellant and the victim, Sandra Knight, attended a house party on the night of April 13, 2007.  They left the party close to midnight, stopped at a drug house to buy crack cocaine, and went to appellant's house.  Appellant called 911 a short time later and an ambulance was dispatched to appellant's house. Paramedics found the victim lying in the driveway next to appellant's car.  She was unresponsive.  Appellant said the victim told him that someone tried to

---

[1] The victim was murdered on April 14, 2007.  Dillard was indicted for malice murder and felony murder on July 6, 2007.  Following a jury trial, which began on May 17, 2011 and ended on May 20th, Dillard was found guilty of malice murder and sentenced to life imprisonment.  On June 15, 2011, Dillard filed a motion for new trial.  The motion was denied on November 20, 2014, and Dillard filed a notice of appeal on December 5, 2014. The case was docketed in this Court to the April 2015 term and submitted for a decision on the briefs.

choke her earlier; that she went into the bathroom to use crack; and that when she came out of the bathroom, she went rigid and collapsed. Attempts to revive the victim were unsuccessful and she was declared dead at 1:05 a.m. on April 14. The medical examiner concluded the victim had been strangled to death.

Investigators examined the victim in the hospital. They observed numerous fresh scratches on the victim's throat and neck. Additionally, investigators noticed that the victim's clothing was in disarray in a sexually suggestive manner inconsistent with emergency treatment.

Later, at approximately 4:45 a.m., investigators went to appellant's house. After giving investigators permission to enter, appellant told them the victim showed him the scratches on her neck at the party and said she was choked by someone (she would not say who) in Bartow, Georgia.

Investigators canvassed the area for witnesses who had seen appellant and the victim the previous night. Seven witnesses said the victim was happy, spoke normally, and had no visible injuries on her neck at that time.

The following day, investigators interviewed appellant and he essentially repeated his account of the night's events. After yet another day, investigators interviewed appellant for a third time. In that discussion, appellant said he lied

about the scratches on the victim's neck, adding that when he and the victim were leaving his house, two unknown men drove up; and that one of the men approached the victim with a gun, began choking her and said she would not steal from him anymore. At trial, appellant told yet another story, similar to the one he originally told investigators.

1. The evidence is sufficient to enable any rational trier of fact to find appellant guilty beyond a reasonable doubt of malice murder. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant asserts the trial court erred in failing to suppress his statements to investigators because they were the product of custodial interrogations without the benefit of Miranda[2] warnings. A person is considered to be in custody and "*Miranda* warnings are required when a person 'is (1) formally arrested or (2) restrained to the degree associated with formal arrest.' [Cit.] Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. [Cit.]" Robinson v. State, 278 Ga. 299, 301 (2) (602 SE2d 574) (2004).

Appellant made several statements to police. Appellant's first statement

---

[2] Miranda v. Arizona, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

was made at his house when he voluntarily showed investigators the scene of the crime. His next statement was made when he voluntarily rode with investigators to and from the hospital to provide fingernail samples. A third statement was made the next day when appellant voluntarily drove himself to the police station for an interview and drove himself home when the interview was completed. The last statement was made after still another day at the GBI office. On that occasion, appellant *was* advised of his constitutional rights. Appellant then stopped the interview; he was permitted to leave and drove off unaccompanied.

Because appellant was neither formally arrested nor restrained to the degree associated with a formal arrest or otherwise deprived of his freedom of action, appellant was not entitled to Miranda warnings. Bell v. State, 280 Ga. 562, 564 (629 SE2d 213) (2006); Hightower v. State, 272 Ga. 42, 43 (526 SE2d 836) (2000). It follows that these statements were properly admitted into evidence. See Freeman v. State, 295 Ga. 820, 822-823 (764 SE2d 390) (2014); Leslie v. State, 292 Ga. 368 (4) (738 SE2d 42)(2013).

That investigators may have believed appellant to be the perpetrator is of no consequence. As long as a person is not in custody, it is irrelevant to the Miranda analysis that investigators "(1) might have focused their suspicions

4

upon the person being questioned, or (2) have already decided that they will take the person into custody and charge [him] with an offense." Hardin v. State, 269 Ga. 1, 3 (494 SE2d 647) (1998). See also Leslie v. State, supra (officer's undisclosed suspicions about suspect do not factor into determination of custody vel non).

3. The trial court did not abuse its discretion in allowing evidence of six similar transactions that occurred between 1991 and 2005.[3]

Under the law applicable at the time of appellant's trial, evidence of a similar transaction may be admitted after a hearing held pursuant to Uniform Superior Court Rule 31.3 (B).[4] At that hearing, the State is required to make three affirmative showings as to evidence of each similar transaction that it seeks to introduce. Williams v. State, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). Specifically, the State must show that:

(1) it seeks to introduce the evidence not to raise an improper

---

[3] The six prior incidents involved Thelma Riles, Jennifer Brown, Cynthia Brown, Linda Campbell, Annette Bass, and Verdell Moore. The trial court did not admit similar transaction evidence showing Dillard tried to strangle a police officer because that occurrence lacked sexual motive.

[4] Because appellant was tried prior to January 1, 2013, Georgia's previous Evidence Code applies to this appeal. Under the new Evidence Code, this category of evidence is governed by OCGA § 24-4-404 (b).

inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

Moore v. State, 290 Ga. 805, 807 (725 SE2d 290) (2012), quoting Williams, 261 Ga. at 642. If the State makes these three affirmative showings, the trial court may still exclude the similar transaction evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Kelley v. State, 308 Ga. App. 418, 421 (2) (707 SE2d 619) (2011). However, on review, the factual findings of the trial court are accepted unless they are clearly erroneous, and the decision to admit similar transaction evidence will be affirmed absent an abuse of discretion. Reed v. State, 291 Ga. 10 (3) (727 SE2d 112) (2012); Wright v. State, 313 Ga. App. 829, 831 (1) (a) (723 SE2d 59) (2012).

The trial court acted within its discretion in finding that a sufficient similarity existed between the six prior transactions and the crime charged so that proof of the former tended to prove the latter. Thelma Riles testified that in 1991 Appellant and others attempted to rape her after luring her with drugs. Jennifer Brown testified that Appellant raped her one night in 1991 when she

6

had been drinking heavily. In 2003, Appellant choked Cynthia Brown, a prostitute, when she refused to continue to engage in a sexual act with him. In 2005, appellant lived with Linda Campbell. Appellant frequently forced himself upon Campbell, by choking and threatening to kill her. In that same year, Appellant solicited Annette Bass for sex; he grabbed her and attempted to rape her; she escaped with a torn shirt. Appellant knew Verdell Moore, who had a drinking problem and sold alcohol illegally. Moore disappeared in 2003; her skeletal remains were discovered in dense woods in 2007. Appellant told a cell mate some of the details surrounding Moore's disappearance, including the fact that he strangled her and dumped her body in the woods.

Our review of the record shows that the trial court did not abuse its discretion by admitting the similar transaction evidence. See Williams, 261 Ga. at 642. The evidence was proffered to show appellant's bent of mind, course of conduct, intent, and lustful disposition. See Jones v. State, 316 Ga. App. 442, 446-447 (2) (a) (729 SE2d 578) (2012) (prior transaction evidence properly admitted to show defendant's course of conduct and bent of mind in dealing with a perceived challenge from a woman). The trial court properly admitted the evidence after finding in each of the transactions that, like the victim in this

case, (1) the victims were young African-American women who were either sex workers or had substance abuse problems, or both; (2) the victims were sexually and/or physically abused – often by choking. "[W]hen considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and crime in question." Payne v. State, 285 Ga. 137, 138 (674 SE2d 298) (2009).

Appellant argues that the trial court abused its discretion in this case because the sheer number of prior transactions overwhelmed the jury with evidence of appellant's bad character. We disagree. The mere fact that the State proferred evidence of multiple similar acts did not render them inadmissible. The trial court properly weighed each similar transaction and determined that its probative value was not substantially outweighed by the danger of unfair prejudice.

4. Four years went by between the time appellant was indicted and brought to trial. This delay was uncommonly long and presumptively prejudicial. Ruffin v. State, 284 Ga. 52, 55 (663 SE2d 189) (2008). Accordingly, we must determine whether appellant was deprived of his constitutional right to a speedy trial using the four-factor balancing test of

*Barker[5]-Doggett[6]*: the length of the delay, who is to blame for the delay, defendant's assertion of his right and whether defendant was prejudiced. Ruffin v. State, supra at 56. In making this determination, we give deference to the trial court's findings and conclusions unless we find it abused its substantial and broad discretion. Heard v. State, 295 Ga. 559, 563 (761 SE2d 314) (2014).

With regard to the first factor, the length of the delay, we have made it clear that:

> The length of the pretrial delay in absolute terms plays a role in the threshold determination of presumptive prejudice. However, it also wears another hat as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis. It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the *Barker-Doggett* analysis. As the Supreme Court has explained, "[t]his latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time." The uncommon length of the pretrial delay thus merits consideration beyond its use as a liminal screening mechanism.

Ruffin, 284 Ga. at 56-57 (footnotes omitted). See also Layman v. State, 284 Ga.

---

[5] Barker v. Wingo, 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972).

[6] Doggett v. United States, 505 U.S. 647 (112 SCt 2686, 120 LE2d 520) (1992).

83, 84-85 (663 SE2d 169) (2008) ("If the delay passes the threshold test of 'presumptively prejudicial,' then the delay is considered a second time by factoring it into the prejudice prong of the *Barker* analysis."). Recognizing that the four year delay was uncommonly long, the trial court properly found that this factor favored appellant.

As to the reason for the delay, the trial court determined that, with the exception of a nine month delay occasioned by the State's appeal of an interlocutory issue,[7] the delay was occasioned by a lack of judicial resources and budgetary shortfalls. The trial court went on to conclude that this factor was neutral. This was error because this factor should have been weighed against the government, albeit lightly. As this Court observed:

> [C]ommon reasons for delay include overcrowded dockets, the government's failure to provide for sufficient numbers of judges, prosecutors, or indigent defense counsel, neglect by the prosecution or other government agents, mere convenience of the prosecution, or the desire to avoid the expense of separate trials for two defendants involved in the same crime. Each of these reasons must be counted against the government in the Barker-Doggett analysis, though less heavily than delay designed to sabotage the accused's case.

---

[7] With regard to the State's appeal, the trial court found no deliberate attempt to delay and hamper the defense. See Barker v. Wingo, supra, 407 U.S. at 531; Perry v. Mitchell, 253 Ga. 593, 594-595 (322 SE2d 273) (1984).

<u>Ruffin v. State</u>, 284 Ga. at 60. See also <u>Barker</u>, supra at 531 (although deliberate attempts to delay trial should be weighted heavily against the state, a "more neutral reason such as negligence or overcrowded courts should be weighted less heavily" against the state); <u>State v. White</u>, 282 Ga. 859, 862 (655 SE2d 575) (2008) (if the delay on the part of the state is negligent, but not deliberate, it is weighed against the state as a "relatively benign" factor).

While appellant was not required to seek a speedy trial at the first available opportunity, it was incumbent upon him to put the State on notice that he preferred to be tried as soon as possible. Here, appellant did not claim his constitutional right to a speedy trial until February 2, 2011 – a mere three months before trial – when he filed a motion to dismiss. Thus, the trial court properly weighed the third factor, which is "entitled to strong evidentiary weight", against appellant. See <u>Barker</u>, supra, 407 U.S. at 531.

As to the fourth factor, the trial court determined that appellant failed to show the delay interfered with his ability to present evidence which would have strengthened his defense. Although one potential witness died before trial, appellant did not demonstrate what that witness's testimony would have been. "A missing witness whose testimony cannot help a defendant constitutes a

flimsy basis on which to claim prejudice." Torres v. State, 270 Ga. 79, 81 (508 SE2d 171) (1998) (citations and quotation marks omitted). Appellant's claim that he suffered from a lack of mental health treatment and that his mental health deteriorated during his incarceration cannot sustain scrutiny. The trial court reasonably and properly found that appellant received regular, appropriate treatment during his incarceration, that his mental health was actually less stable before he was incarcerated, and that he could not point to any harm other than the incarceration itself. See Sweatman v. State, 287 Ga. 872, 875 (700 SE2d 579) (2010) (defendant "did not experience any unusual anxiety and concern beyond that which necessarily accompanies serious pending charges"). This factor weighs against appellant.

Although the trial court erred in failing to weigh the second factor – the reason for the delay – lightly against the government, "we review a trial court's grant or denial of a motion to dismiss the indictment on speedy trial grounds for abuse of discretion only." Ruffin, 284 Ga. 65-66. "'It is not the job of [an] appellate court . . . to weigh the Barker factors in the first instance, [State v.] Pickett, 288 Ga. 674, 679-680 (2) (d) (706 SE2d 561) (2011), and so, when a trial court has abused its discretion in its consideration of these factors, we

12

generally remand the case for the trial court to exercise its discretion again. [Cits.]" State v. Johnson, 291 Ga. 863, 868 (734 SE2d 12) (2012). However, even "[i]f the trial court significantly misapplies the law or clearly errs in a material factual finding, the trial court's exercise of discretion can be affirmed . . . if the appellate court can conclude that, had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment." Pickett, 288 Ga. at 679.

In Ruffin v. State, supra, the trial court weighed the four Barker factors and found no violation of Ruffin's constitutional right to a speedy trial. As in this case, the trial court misapplied the second Barker factor, finding that multiple substitutions of counsel for Ruffin's co-defendant were the fault of neither the State nor Ruffin, when, under the circumstances of that case, the delay should have been weighed lightly against the government. Nevertheless, this Court did not remand to have the trial court analyze the Barker factors anew. On the contrary, it affirmed, finding no abuse of discretion on the part of the trial court in view of Ruffin's failure to show prejudice and assert his right to a speedy trial in a more timely fashion. Ruffin, 284 Ga. 65-66.

Here, too, although the trial court misapplied the second Barker factor, we

13

need not remand this case because, even if the trial court had properly weighed the second factor lightly against the government, it was incumbent upon the trial court to find no constitutional error given appellant's long delay in asserting his right to a speedy trial and his failure to demonstrate prejudice. Ruffin, supra. See also Phan v. State, 287 Ga. 697, 700 (699 SE2d 9) (2010) (Nahmias, J., concurring) ("delayed assertion of the right to a speedy trial and lack of prejudice are the two factors that most often weigh heavily against defendants and which then support the overall conclusion that speedy trial rights have not been violated").

Judgment affirmed. All the Justices concur.