307 Ga. 510
FINAL COPY

S19A1280.  CASH v. THE STATE.

PETERSON, Justice.

Dundell Cash appeals his 2017 malice murder conviction for the 2006 fatal shooting of Euan Dougal outside a Columbus nightclub.[1] His sole argument on appeal is that the trial court erred by denying his motion for new trial based on an alleged violation of

---

[1] The shooting took place on November 10, 2006. On April 21, 2009, a Muscogee County grand jury returned a no-bill on an indictment charging Cash with malice murder and other crimes arising from the shooting. On March 10, 2015, a second Muscogee County grand jury returned a true bill of indictment charging Cash with malice murder, felony murder predicated on aggravated assault, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. By order entered on April 7, 2016, the trial court dismissed all but the malice murder and felony murder charges as time-barred. In a separate order issued that same day, the trial court denied Cash's motion to dismiss the murder charges on constitutional speedy trial grounds; this Court denied Cash's application for an interlocutory appeal of that order on June 8, 2016. At a January 2017 trial, a jury found Cash guilty of malice murder and felony murder. After a sentencing hearing held on February 15, 2017, the trial court sentenced Cash to life in prison for malice murder; the felony murder count was vacated by operation of law. Cash filed a motion for new trial on March 1, 2017; the motion was amended by appellate counsel on July 2, 2018. The trial court denied the motion in an order dated April 16, 2019. A notice of appeal was timely filed, and the case was docketed to the August 2019 term and orally argued on November 5, 2019.

his constitutional right to a speedy trial. Finding no abuse of the trial court's considerable discretion in rejecting Cash's speedy trial claim, we affirm.

Dougal was shot and killed during an encounter outside a Muscogee County strip club in the early morning hours of November 10, 2006. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed that Dougal was shot at closing time while waiting on his girlfriend, a club dancer named Samantha Taylor. Taylor had gone outside to speak to Dougal, but the doorman had directed her to go back inside per club protocol. As she reached the door to go back into the club, Taylor heard gunshots. Just before the shooting, the club's doorman had warned Cash, who also was standing outside, about talking to the club's female employees as they were leaving; Cash complained about wanting more in return for the money he had spent at the club that night.

Later that day, police obtained a warrant for Cash's arrest charging him with Dougal's murder. Cash was arrested in South Carolina on November 2, 2008. On April 21, 2009, a Muscogee

2

County grand jury returned a no-bill on an indictment charging Cash with malice murder and other crimes. Cash was released from jail shortly thereafter. Cash's trial attorney later testified that an assistant district attorney informed the defense at the time that the no-bill was returned because the only eyewitness to the shooting, Dennis Archer, had died. The ADA testified that he did not remember whether he had contacted defense counsel to inform him about the no-bill; he also testified that he did not lie to or mislead the defense and "shared with the defense, if anything at all, that we had no idea where [Archer] was[.]"

On March 10, 2015, a grand jury returned a true bill of indictment against Cash, charging him with malice murder, felony murder, and other crimes arising from the shooting. On October 1, 2015, Cash filed a motion to dismiss the indictment based on a violation of his constitutional right to a speedy trial. Cash argued that the delay in bringing his case to trial had prejudiced him, in part due to the loss of several witnesses, including Calvin Jones, who died in 2010. Cash submitted his own affidavit stating that Jones

had picked him up at the club shortly after closing on the night of the murder and that Jones saw that he was wearing a black jacket. After a hearing, the motion was denied by a written order entered on April 7, 2016. This Court denied Appellant's application for interlocutory appeal.

At the January 2017 trial of the case, the jury heard from several witnesses who identified Cash as the man they saw standing outside the strip club with Dougal just before the shooting. At least one of those witnesses said Cash was wearing a gray "hoodie"; another witness who saw Cash that night told police that Cash was wearing a dark blue or black jacket and testified that Cash wore a jacket with a hood. Another witness picked Cash out of a photo lineup as a man she saw walking briskly away from the club after the shooting; that witness said the man she saw was wearing a "big black jacket." A group of Army Rangers who had been visiting the club saw a black man running away from the club after the shooting; one of them who testified at trial said that the man he saw running was wearing a gray "hoodie," while a brother of one of the Rangers

4

testified that a man who "caught [his] eye" at a gas station immediately after the shooting wore a "grayish hoodie."

The jury also heard live testimony from Archer, who, as it turned out, was still very much alive. Archer testified that he was outside near an entrance to the club at the time of the shooting and saw two people having a conversation but did not see any faces. He denied signing his initials on a photo lineup shown to him on the night of the shooting, when, according to a law enforcement witness, he picked out Cash as the shooter.

Ben Freiberg and Steven Bell, two Army Rangers who were at the club on the night of the shooting, could not be located for trial, so their statements to police were read into the record by a retired Columbus police detective. Neither could identify the shooter; Bell said the shooter wore a jacket, while Freiberg said that, at the gas station, they encountered a man wearing a gray "hoodie" with a handgun hanging out of his pants.

Convicted of malice murder, Cash received a sentence of life in prison. Cash argued in moving for a new trial that he had been

5

denied his constitutional right to a speedy trial. The trial court in its order calculated the relevant period of delay as at most 28 months — the six months between Cash's November 2008 arrest and subsequent release from jail in April 2009 after the grand jury returned a no-bill, plus the 22 months from the date of the March 2015 indictment to the trial that began on January 24, 2017. Otherwise, the trial court's analysis of the appropriate factors was similar to that in its order denying the motion to dismiss: the trial court found that the length of the delay weighed against the State, but not "too heavily"; that the reason for the delay factor weighed "relatively benignly" against the State; that Cash's failure to exercise his speedy trial right sooner weighed against him; and that the prejudice factor could not weigh in Cash's favor, because he had not shown that he had suffered actual prejudice as a result of the delay. The trial court specifically found that Cash had not proven that the State lied to or misled the defense about the status of Archer.

1.    Although Cash does not challenge the sufficiency of the

6

evidence, we have independently reviewed the record and conclude that the evidence presented at trial — while not strong — was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crime of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2.    Cash argues that the trial court erred in failing to dismiss the indictment for a violation of his right to a speedy trial. We find no clear error in the trial court's factual findings, and we find no abuse of discretion in the court's weighing of the factors and ultimate decision to reject Cash's speedy trial claim.

(a) *Threshold considerations.*

Courts examining an alleged denial of the constitutional right to a speedy trial first must consider whether the interval between the defendant's arrest, indictment, or other formal accusation and the trial is sufficiently long so as to be characterized as "presumptively prejudicial." See *State v. Porter*, 288 Ga. 524, 525 (2) (a) (705 SE2d 636) (2011). If the delay is long enough to invoke the

presumption of prejudice, the trial court must balance four factors: (1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for the delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result. See *Barker v. Wingo*, 407 U. S. 514, 530-533 (92 SCt 2182, 33 LE2d 101) (1972); see also *Doggett v. United States*, 505 U. S. 647, 651 (112 SCt 2686, 120 LE2d 520) (1992). "The trial court's weighing of each factor and its balancing of all four factors — its ultimate judgment — are reviewed on appeal only for abuse of discretion." *Porter*, 288 Ga. at 526 (2) (a). "However, where the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished." Id. (citation and punctuation omitted).

The trial court found that the delay in Cash's case was at most 28 months. The trial court determined that this qualified as presumptively prejudicial and thus proceeded to consider the four *Barker* factors. Cash does not meaningfully dispute that the trial

court properly calculated the length of the delay for purposes of triggering the *Barker* analysis at 28 months at most.[2] And the State has not challenged the trial court's determination that the delay was sufficiently long to warrant consideration of the *Barker* factors. See *Doggett*, 505 U. S. at 652 n.1 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." (citation omitted)); *Heard v. State*, 295 Ga. 559, 564-565 (2) (d) (761 SE2d 314) (2014) ("a delay approaching one year is sufficient in most cases to raise a presumption of prejudice and to warrant a more searching inquiry" (citation and punctuation omitted)). Cash argues that the trial court erred in its application of each of the four factors,

---

[2] At oral argument, defense counsel suggested the proper calculation was 29 months, but this appears to reflect only an immaterial rounding difference. To the extent that Cash's brief can be read to challenge this calculation because it excluded the period between his release from jail upon the return of the no-bill and his indictment, he is wrong. *United States v. Loud Hawk*, 474 U. S. 302, 310-311 (106 SCt 648, 88 LE2d 640) (1986); *United States v. MacDonald*, 456 U. S. 1, 8-9 (102 SCt 1497, 71 LE2d 696) (1982); *Wooten v. State*, 262 Ga. 876, 878-880 (2) (426 SE2d 852) (1993). Cash was not incarcerated or under formal charges during this time, and counsel conceded at oral argument that Cash faced no restraint on his liberty in the form of bail restrictions or otherwise.

so we discuss each in turn.[3]

(b) *Barker factor balancing.*

(i) *Length of the delay.*

Although the trial court concluded that the length of the delay weighed against the State, Cash argues that the trial court erred in failing to weigh the length of the delay more heavily against the State. We find no abuse of discretion in the court's consideration of this factor.

As noted above, Cash does not contest that the delay was properly calculated at about 28 months. But, citing decisions from two federal circuit courts, Cash argues that the trial court erred by

---

[3] In a separate enumeration, Cash complains that the trial court found without a sufficient factual basis that he eluded arrest, something the trial court mentioned only in conducting the threshold inquiry. But, regardless of whether there was a sufficient record basis for the trial court's finding of "flight," any such factual finding did not factor into its weighing of the *Barker* factors. Rather, after finding that the delay was presumptively prejudicial such that consideration of the *Barker* factors was appropriate — something that Cash does not dispute — the trial court noted in passing that Cash's flight "present[ed] unusual challenges to [the case's] prompt resolution[.]" The trial court never mentioned flight in its consideration of the *Barker* factors, except to the extent that, in examining the strength of the State's case for purpose of weighing the prejudice prong, the trial court noted that Cash's flight from the *scene* was evidence of consciousness of guilt.

10

not taking into account the 70 months between his release upon the return of the no-bill and his indictment in considering how *heavily* to weigh the 28-month delay against the State. See *United States v. Oliva*, 909 F3d 1292, 1304-1305 (11th Cir. 2018); *United States v. Ingram*, 446 F3d 1332, 1339 (11th Cir. 2006); *United States v. Watson*, 599 F2d 1149, 1157 (2d Cir. 1979). These three opinions are the sum total of the case law that Cash cites on this point. And although our research has revealed similar case law from those circuits, see *United States v. Lamb*, 214 Fed. Appx. 908, 914 (11th Cir. 2007); *United States v. Vispi*, 545 F2d 328, 333 (2nd Cir. 1976), we have found no other federal circuit or state appellate court applying a rule that a trial court evaluating a Sixth Amendment speedy trial claim should consider the sort of delay at issue here in determining how heavily to weigh the length of time under which the defendant was incarcerated or under indictment. Cf. *Brown v. Romanowski*, 845 F3d 703, 715 (6th Cir. 2017) (rejecting defendant's reliance on *Ingram* as inapplicable, on basis that pre-indictment, pre-arrest delay was only about five months). Neither the United

11

States Supreme Court nor this Court has held that. And Cash's counsel acknowledged at oral argument that he had found no case holding that it is reversible error not to consider "pre-indictment" delay, acknowledging that the trial court's consideration of a speedy trial claim is "flexible." Indeed, the circuits whose decisions are cited by Cash have considered pre-arrest, pre-indictment delay in the context of other factors such as the complexity of the crime and investigation. See *Oliva*, 909 F3d at 1304-1306; *Vispi*, 545 F2d at 333.[4] We cannot say that the trial court erred by failing to consider explicitly the time period between Cash's release from jail following

---

[4] Although in *Ingram* and *Vispi* the federal circuit courts reversed the defendants' convictions with instructions to dismiss the charges, they drew no conclusion that the trial court had abused its discretion in determining how heavily to weigh any particular factor. In *Ingram*, the Eleventh Circuit observed that the district court had failed to complete the *Barker* analysis by stating how heavily each factor weighed against a particular party, then proceeded to perform that analysis itself. *Ingram*, 446 F3d at 1336. This Court does not engage in such a practice, as it fails to respect the discretion the trial court is afforded. See *Porter*, 288 Ga. at 533 (2) (e) ("[I]t is imperative that in cases implicating a defendant's constitutional right to speedy trial, the trial court enter findings of fact and conclusions of law consistent with *Barker*. Absent such findings, there is no exercise of discretion for this Court to review, and the trial court's order must be vacated and the case remanded for the entry of a proper order pursuant to *Barker*." (citation and punctuation omitted)). And in *Vispi*, the Second Circuit opinion contains no reference to the trial court's analysis of the defendant's speedy trial claim, merely noting that the defendant "pressed for a trial" and was tried more than a year later. 545 F2d at 330.

the grand jury's return of a no-bill and the date of Cash's indictment, and we see no abuse of discretion in the trial court's conclusion that the length of the delay did not weigh "too heavily" against the State.

(ii) *Reason for the delay.*

The trial court concluded that the reason for the delay should weigh "relatively benignly against the State," finding that the primary reason for the delay was the temporary loss of Archer and the State had not acted deliberately in delaying the case. Cash brings several challenges against the trial court's analysis on this point. These challenges do not warrant reversal.

Cash argues that the trial court erred by finding that he did not prove that the State lied to or misled the defense about Archer's whereabouts. He contends that the trial court's finding does not make sense given that it credited the prosecutor's statement that he did not lie to or mislead defense counsel despite the prosecutor's testimony that he could not remember whether he had contacted defense counsel to inform him about the no-bill. To the extent that the trial court implicitly credited the prosecutor's account, we cannot

13

conclude that this finding of fact was clearly erroneous, particularly given that the trial court had the opportunity to hear live testimony from both the prosecutor and Cash's trial counsel at the motion for new trial hearing. See *Sweatman v. State*, 287 Ga. 872, 874-875 (4) (700 SE2d 579) (2010) (trial court's findings of fact on a speedy trial claim are given particular deference "where the findings were based on live testimony and the trial court had the opportunity to assess the credibility of the witnesses").

Cash also argues that the State's search for Archer was grossly negligent, and thus the trial court erred in finding that it was diligent. We do not find clear error in this finding. The State submitted documentation that, prior to the no-bill, it had attempted (unsuccessfully) to confirm Archer's death through a coroner's office and health department and attempted to reach him by mail. The trial court heard testimony from the prosecutor that, after the return of the no-bill, his investigator would "run up [Archer's] history" on an annual basis. The State also introduced documents evidencing a 2014 attempt to find good contact information for

14

Archer. Given this evidence, we defer to the trial court's determination, particularly given that most, if not all, of the investigative delay about which Appellant complains came during the period in which he faced no charges and was subject to no deprivations of liberty. See *Heard*, 295 Ga. at 565 (2) (d) (deferring to trial court's determination that State's efforts to identify, locate, and interview missing witness were sufficiently diligent, even though those efforts consisted of juvenile court investigator searching for witness "in his spare time").

Cash also argues that the trial court should not have blamed him for any of the delay following his indictment, complaining that the trial court improperly cited his counsel's requests for leaves of absences and consent to continuances. But the trial court referenced the defense's consent to continuances only in noting that a certain "portion" of the delay could be equally assigned to both the defense and the State, which also had agreed to the continuances. And defense requests for leaves of absences may be considered in determining the reason for the delay. See *Smith v. State*, 275 Ga.

15

261, 262-263 (564 SE2d 441) (2002). Although Cash points out that some of the requested leave-of-absence time referenced by the trial court coincided with the time period during which the case was with this Court on Cash's application for interlocutory appeal, he does not contend that all requested leave periods occurred during that time. We find no abuse of discretion in the trial court's conclusion that the reason for the delay weighed relatively benignly against the State.

(iii) *Assertion of the right.*

Cash argues that the trial court erred by weighing against him the time that he took to assert his speedy trial right. We disagree.

"The accused is not required to demand a speedy trial at the first available opportunity"; the relevant question under this third factor is "whether the accused has asserted the right to a speedy trial 'in due course.'" *Ruffin v. State*, 284 Ga. 52, 62-63 (2) (b) (iii) (663 SE2d 189) (2008) (quoting *Doggett*, 505 U. S. at 651). "This requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately." Id. at 63 (2) (b) (iii).

16

"Our cases hold that an extended delay in asserting the right to a speedy trial should normally be weighed *heavily* against the defendant." *Porter*, 288 Ga. at 529 (2) (c) (3) (emphasis in original). Cash argues that this factor cannot be weighed against him given that he filed his motion to dismiss within two weeks of the "accrual" of his speedy trial right: when the time from his November 2008 arrest and subsequent release from jail, plus the time following his indictment, reached the one-year mark. But this is not the law. Although we have said that a defendant has the "responsibility to assert" his speedy trial right once it "accrues," we have not equated accrual of the right with the one-year, presumptively prejudicial period of delay that satisfies the threshold inquiry; rather, "a defendant may assert his constitutional right to a speedy trial at any time after he is arrested" and "need not wait until indictment." *State v. Pickett*, 288 Ga. 674, 676 (2) (c) (3) (706 SE2d 561) (2011). Indeed, the United States Supreme Court has rejected the notion that the right must be asserted or waived by a precise point in the process. See *Barker*, 407 U. S. at 522-530.

17

Here, Cash did not assert his right to a speedy trial during the six months that he was incarcerated prior to the no-bill, even though he had the benefit of counsel during that time. He never filed a statutory demand. And he did not file his motion to dismiss until nearly seven months after he was indicted, having agreed to several continuances, according to the trial court's order denying the motion for new trial. We do not see an abuse of discretion in the trial court's conclusion that Cash's failure to assert the right sooner weighed against him. See *State v. Alexander*, 295 Ga. 154, 159 (2) (c) (758 SE2d 289) (2014) (noting that absence of counsel for an extended time may mitigate the failure of the accused to assert his right more promptly); *Higgenbottom v. State*, 290 Ga. 198, 202 (1) (C) (719 SE2d 482) (2011) (trial court's determination that assertion-of-the-right factor weighed heavily against defendant supported by defendant not availing himself of statutory speedy trial right and not filing his constitutional speedy trial motion to dismiss until more than two years following his arrest and after he requested and was granted a continuance).

(iv) *Prejudice.*

Finally, Cash argues that the trial court erred by not weighing the prejudice factor in his favor. The trial court did not abuse its discretion.

Again, a delay of one year generally marks the point at which delay becomes presumptively prejudicial. And "once the threshold of presumptive prejudice is satisfied, a presumption of prejudice always exists, although it increases in weight over time." *Porter*, 288 Ga. at 531 (2) (c) (4). "The weight given to the prejudice factor may be bolstered if the defendant can demonstrate some actual impairment to his defense in addition to prejudice that is presumed from the passage of time." Id. at 532 (2) (d).

Cash argues that he was not required to show actual prejudice because the delay in his case was in excess of five years and the other factors weighed heavily against the State. But the prejudice prong may be weighed against the defendant even in cases of excessive delay. See *Dillard v. State*, 297 Ga. 756, 761-762 (4) (778 SE2d 184) (2015) (prejudice factor weighed against the appellant despite four-

year delay, where the trial court determined that appellant failed to show the delay interfered with his ability to present evidence which would have strengthened the defense).

At any rate, the delay in this case was properly calculated at 28 months, and the trial court acted within its discretion in not weighing all of the other factors heavily against the State. Moreover, the trial court did not "require" Cash to demonstrate actual prejudice in order to win his speedy trial claim. Rather, acknowledging the presumption of prejudice created by the length of the delay, and finding that Cash had not demonstrated actual prejudice, the trial court found that this factor did not weigh in Cash's favor. The trial court did not abuse its discretion by failing to weigh this factor in Cash's favor merely because his case had been delayed for 28 months.

Cash also argues that he demonstrated actual prejudice. We disagree.

> The types of prejudice associated with an unreasonable delay before trial include oppressive pretrial incarceration, anxiety and concern of the accused, and the

> possibility that the accused's defense will be impaired by
> dimming memories and loss of exculpatory evidence. Of
> these forms of prejudice, the most serious is the last,
> because the inability of a defendant adequately to prepare
> his case skews the fairness of the entire system.

*Porter*, 288 Ga. at 529 (2) (c) (4) (citations and punctuation omitted).

Cash asserts this last form of prejudice, arguing that his defense was compromised by the death of Calvin Jones and the absence of Freiberg and Bell. The trial court's finding that Cash has not demonstrated actual prejudice in any of these respects is not clearly erroneous.

As to Jones, the trial court both expressed skepticism as to whether he would have testified as Cash claimed and concluded that it was highly unlikely that, even if Jones had testified as such, his testimony would have changed the result of the trial. These findings are not clearly erroneous. Jones died in 2010, not during a period of delay to which Cash's constitutional speedy trial right applied; even if the State had tried Cash immediately upon indictment, Jones already would have been dead. Cash presented no evidence other than his own self-serving affidavit that he even knew Jones, let

alone that Jones was at the scene on the date of the shooting. And the alleged testimony of Jones concerning details of Cash's clothing would have been cumulative of the trial witnesses who said that Cash's jacket was dark blue or black.

The trial court also did not clearly err in concluding that Cash had not demonstrated actual prejudice from the loss of Freiberg and Bell. Without objection by the defense, the State presented the witnesses' statements to the jury by having a law enforcement officer read them into the record. Although Cash notes that Freiberg described the height of the man the Rangers encountered relative to that of Freiberg and Bell, saying the man was taller than them, Cash ignores that Freiberg also used numerical measurements to describe the man's height.[5] Other than positing that live testimony is inherently more valuable, he offers no basis for concluding the

---

[5] Freiberg described the man he encountered as "a little taller than me and Bell," "about 6-2 tall or maybe a little taller," and "taller than Bell, about 6-1 to 6-3 tall." The record contains evidence that Cash is 5 feet, 10 inches. In other words, Cash did not need Freiberg or Bell to stand in front of the jury or be subject to cross-examination in order to show that Freiberg said the man he encountered was several inches taller than Cash.

defense was hurt by a lack of live testimony by Freiberg and Bell. And Cash has not demonstrated that Freiberg and Bell would have been found more readily had he been tried more promptly. The trial court did not clearly err in finding that Cash did not demonstrate actual prejudice from the delay of his case. See *Higgenbottom*, 290 Ga. at 202-203 (1) (D) (defendant failed to show prejudice from death of medical examiner who concluded victim's death was accidental, given that doctor died before attachment of defendant's constitutional right to speedy trial and that State offered to stipulate to admission of autopsy report). The trial court did not abuse its discretion by failing to weigh the prejudice prong in Cash's favor.

In sum, we see no abuse of discretion in the trial court's weighing of the factors or clear error in the factual findings that supported those determinations. Cash does not otherwise challenge the trial court's ultimate decision to reject his speedy trial claim, and we see no abuse of discretion in that decision. Cash has pointed to no basis for reversal of his conviction.

*Judgment affirmed. All the Justices concur.*

DECIDED DECEMBER 23, 2019.

Murder. Muscogee Superior Court. Before Judge McBride.

*Arora & Lascala, Manubir S. Arora, Devin A. Rafus*, for appellant.

*Julia F. Slater, District Attorney, Christopher D. Williams, Benjamin E. Gephardt, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.