NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 20, 2022

S22A0794. WILLIAMS v. THE STATE.

BETHEL, Justice.

Erik Albert Williams, Jr. was convicted of malice murder and other crimes in connection with the shooting death of Deangelo Hudgins and the shooting of Albert Gilbert. On appeal, Williams raises three enumerations of error: (1) that the evidence presented at trial was insufficient as a matter of due process to support his convictions; (2) that the trial court erred by failing to grant a new trial when Williams's accomplice's guilty plea was admitted into evidence and used substantively against him; and (3) that the trial court abused its discretion by determining that his constitutional right to a speedy trial was not violated.[1] For the reasons that follow,

---

[1] The crimes occurred on July 18, 2010. On October 5, 2010, a Richmond County grand jury indicted Williams and Edwin Cruz with malice murder

we affirm Williams's convictions.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On July 18, 2010, Hudgins left a party with his then-girlfriend, Atalecia Anderson, and several of her friends. While Anderson was driving, one of her friends, Shardae Davis, and Hudgins got into an argument in the car. The argument escalated, and Anderson pulled the car over to

---

(Count 1), felony murder (Count 2), two counts of possession of a firearm during the commission of a crime (Counts 3 and 5), and aggravated assault (Count 4). Williams was also indicted individually for possession of a firearm by a convicted felon (Count 6), but the trial court later entered an order of nolle prosequi on that count. Cruz's case was severed from Williams's case, and Cruz pled guilty to voluntary manslaughter. His case is not part of this appeal.

At a jury trial held in March 2012, Williams was found guilty as to Counts 1 through 5 and given a total sentence of life in prison without the possibility of parole plus 30 years. This Court later reversed Williams's convictions and sentence and ordered that he receive a new trial due to the improper admission of Williams's prior conviction for the offense of making terroristic threats. See *Williams v. State*, 299 Ga. 834 (792 SE2d 336) (2016).

Williams was again tried by a jury in December 2018. In that trial, the jury found Williams guilty of Counts 1 through 5. The trial court sentenced Williams to serve life in prison without the possibility of parole on Count 1, five years in prison on Count 3, 20 years in prison on Count 4, and five years in prison on Count 5, all to be served consecutively. The trial court purported to merge Count 2 with Count 1, but Count 2 was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Williams filed a motion for new trial on December 10, 2018, which he amended through new counsel in July 2021. Following a hearing, the trial court denied the motion, as amended, on December 3, 2021. Williams timely filed a notice of appeal. The case was docketed to this Court's April 2022 term and submitted for a decision on the briefs.

the side of the road. As the argument continued, Shardae's brother, Tony Davis, arrived at the car. Tony was informed by another passenger that Hudgins had harmed Shardae. Tony and Hudgins then got into a physical altercation.

After the incident, Tony, Shardae, and two other passengers, Trenay Johnson and Jasmine Johnson, left to go to the apartment complex where Trenay and Jasmine lived. On his way to the apartment, Tony called Williams to tell him what happened. During the call, Trenay gave Williams directions to the apartment.

Anderson and Hudgins left separately in Anderson's car. At some point, Hudgins asked to exit the car so that he could walk home. While Hudgins was walking, he called Gilbert and asked him to pick him up and drive him to Trenay and Jasmine's apartment so he could speak with Tony. After they arrived at the apartment, Hudgins and Gilbert knocked on the door and relayed a desire to speak with Tony but were told by someone inside to leave.

As Hudgins and Gilbert walked back into the parking lot, they saw that another car was blocking Gilbert's car. When they

approached the passenger side of the car to ask why it was blocking them in, two shots were fired at them. Both Gilbert and Hudgins were hit. Gilbert was shot in the hip. The shot fractured his hip and caused permanent damage. Hudgins was shot in the chest and died as a result of his injuries. Neither victim was armed. The car from which the shots were fired was later identified as belonging to Williams's accomplice, Edwin Cruz.

A few days after the shooting, Williams called Tony. During this call, Williams apologized "for bringing that drama to th[e] apartment" but stated that he "d[idn't] give a damn who he is, he ain't had the right putting his hands on [Tony's] sister and none of that."

Williams was later arrested and interviewed by the police. After receiving *Miranda* warnings,[2] Williams admitted that he and Cruz drove to the apartment complex that night. Williams also admitted that he shot the gun but claimed that he shot at Hudgins

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

and Gilbert in self-defense because he was scared.

2. Williams first contends that the evidence presented at trial was insufficient under *Jackson v. Virginia,* 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), to support his convictions because he presented evidence that he shot Hudgins and Gilbert in self-defense. See OCGA § 16-3-21 (a) ("[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony."). Williams claims that no rational trier of fact could have found him guilty beyond a reasonable doubt because he presented sufficient evidence supporting his self-defense claim. Namely, Williams argues that the evidence showed that Hudgins acted aggressively earlier in the evening; "was a large, fit person"; had consumed alcohol that evening; and approached Williams "in the dark of the night and placed Williams in reasonable apprehension of death or bodily injury." We disagree that the evidence presented was insufficient.

5

When evaluating a challenge to the sufficiency of the evidence [as a matter of constitutional due process], we view all of the evidence presented at trial in the light most favorable to the verdict and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted.

*Jones v. State*, 304 Ga. 594, 598 (2) (820 SE2d 696) (2018) (citing *Jackson*, 443 U. S. at 318-319 (III) (B)). Here, the State presented evidence that Hudgins and Gilbert simply walked up to Cruz's car just before they were shot. Additionally, the State presented evidence from which the jury could infer that Williams fired the shots not in self-defense, but rather in retribution for the earlier altercation between Hudgins and Shardae. Such evidence included statements Williams made to Tony two days after the shooting in which he said that Hudgins had no right to put his hands on Shardae. Thus, despite his claim of self-defense, viewing the evidence in the light most favorable to the verdicts, we conclude that the evidence was sufficient for a reasonable jury to find Williams guilty beyond a reasonable doubt. See *Jackson*, 443 U. S. at 319 (III) (B). See also *Harris v. State*, 313 Ga. 225, 229 (2) (869 SE2d 461)

(2022) ("We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts, and we do not reweigh the evidence." (citations and punctuation omitted)); *Howard v. State*, 298 Ga. 396, 398 (1) (782 SE2d 255) (2016) ("A jury is free to reject a defendant's claim that he acted in self-defense." (citation omitted)).

3. Williams next enumerates as error the trial court's failure "to grant a new trial when [Cruz's] plea[3] was admitted into evidence and used substantively against [Williams]." The central problem with this claim of error is that Cruz's guilty plea (and subsequent conviction) was never admitted into evidence. Williams never called Cruz as a witness, and the State never introduced evidence of Cruz's plea and conviction. We cannot review the admission of evidence for error if it was never admitted.

Nevertheless, Williams's argument in support of this

---

[3] Before Williams's second trial, Cruz entered a guilty plea for voluntary manslaughter for his involvement in the events giving rise to this case.

7

enumeration tries to assert that the trial court's purported ruling to allow the impeachment of Cruz via his guilty plea had the effect of impairing Williams's constitutional due process right to present a "complete defense." Assuming, without deciding, that the trial court made a definitive ruling as to whether Cruz's guilty plea would have been admitted into evidence[4] and that Williams's claim of error

---

[4] While the trial court's order denying the motion for new trial seems to accept that the trial court issued a definitive ruling with respect to the admission of evidence of the conviction for impeachment purposes, the record seems less clear to us. In response to a motion in limine to exclude Cruz's guilty plea as unduly prejudicial under OCGA § 24-4-403, the trial court initially stated: "I'll listen to the examination of the witness. I will respectively [sic] deny the motion. . . . And I'll just have to listen to how the testimony unfolds." After further discussion of the motion, the trial court expressed that its "inclination now is that it's too risky" to permit impeachment of Cruz based on his guilty plea, but that the court would "listen." Later in the proceeding, the parties addressed the motion in limine again. After hearing additional arguments, the court stated:

> Well again I'll give you the Court's inclination and you'll also have the opportunity to research and review all that we have addressed here today. It would be to allow a thorough and sifting cross-examination. To allow impeachment – to allow for impeachment purposes the [guilty plea] and to give the jury an instruction in that regard.

In the context of the record as a whole, it is unclear whether the trial court issued a definitive ruling of the sort that would be subject to ordinary appellate review. See *Johnson v. State*, 292 Ga. 785, 788 (4) n.3 (741 SE2d 627) (2013) (noting that from our review of the entire colloquy, it was unclear "whether the trial court denied the motion [in limine] or deferred a ruling"

8

presents a cognizable due process claim,[5] we note that such a claim

when it stated it "would not grant" the motion); *Askew v. State*, 254 Ga. App. 137, 138-139 (2) (564 SE2d 720) (2002) (holding that the record did not support a finding that the trial court granted the State's motion in limine because the "record show[ed] only that the trial court stated it was not inclined to admit" the evidence and that the court was "not saying at this point that it is absolutely to be excluded," the appellant never tried to introduce the evidence, and the evidence was never admitted); *Holland v. State*, 176 Ga. App. 343, 344 (3) (335 SE2d 739) (1985) (stating it was "not clear whether the [trial] court denied the motion [in limine] or reserved its ruling" when it stated that the "motion was denied but also stated that it would rule on evidence as it was presented"). Additionally, it seems even more doubtful that this statement constituted a ruling on the motion in limine, given the trial court's statements suggesting that the parties would have an additional opportunity to research and address this issue before the court made a final ruling. See *Jackson v. State*, 306 Ga. 69, 87-88 (6) (a)-(b) (829 SE2d 142) (2019) (noting that the trial court "did not make a definite ruling" when it "indicated that it was leaning toward ruling that [specific evidence] could not be used" and granted a recess request to "allow time to research the issue . . . because after doing his own research, [the appellant's] trial counsel announced that he would not bring up the [evidence at issue], and he never did").

Nevertheless, because this enumeration fails for other reasons, we express no opinion today concerning whether the trial court in fact ruled that the State could impeach Cruz with his guilty plea.

[5] In support of his due process argument, Williams directs us to *Padidham v. State*, 291 Ga. 99, 102 (2) n.4 (728 SE2d 175) (2012) (citing *California v. Trombetta*, 467 U. S. 479, 485 (104 SCt 2528, 81 LE2d 413) (1984)) and *Washington v. Texas*, 388 U. S. 14, 19 (87 SCt 1920, 18 LE2d 1019) (1967)). But these cases concern procedural barriers to a defendant's right to present a defense that are not present here. See *Trombetta*, 467 U. S. at 482-484, 489 (I), (II) (determining that due process does not require the government to preserve breath-sample evidence and make that evidence available to a defendant in the context of DUI investigations); *Washington*, 388 U. S. at 15-16, 23 (II) (holding that a Texas statutory scheme prohibiting a defendant from calling a person charged or convicted as a co-participant in the same crime as a witness at trial violated the defendant's "right to have compulsory process for obtaining witnesses in his favor"); *Padidham*, 291 Ga. at 101-102 (2) & n.4 (noting that

would require a showing of harm. But no evidence that could provide a basis for the evaluation of harm appears in the record. Because Cruz never testified under oath, nor did his counsel make a proffer[6] to the trial court providing the substance of his would-be testimony, it is impossible to determine whether any supposed error leading to the exclusion of his testimony resulted in harm to Williams. This deficiency is fatal to the preservation of the sort of claim Williams attempts to construct.[7] See *Fuss v. State*, 271 Ga. 319, 321 (3) (519

the defendant's challenge to Georgia's DUI laws was not "a case where the State's procedure denies criminal defendants their right to present a complete defense"). Nothing in any of the cases cited by Williams supports an argument that an evidentiary ruling allowing impeachment with a witness's guilty plea arising from the events underlying the trial deprives a defendant of the right to compulsory process or the presentation of a complete defense or that the trial court's purported ruling in this case deprived him of the ability to present his defense. But considering that this enumeration fails for other reasons, we express no opinion today concerning whether Williams has presented a legally cognizable due process argument.

[6] Because we are assuming the existence of the sort of claim Williams asserts, we decline to express any opinion respecting whether sworn testimony would be required to complete such a claim or whether a proffer would suffice. See, e.g., *Morris v. State*, 303 Ga. 192, 194-195 (II) (811 SE2d 321) (2018) ("A fundamental flaw in all of the appellant's contentions regarding the testimony he hoped to elicit from the witness is that the appellant has failed to show what the testimony would have been." (cleaned up)).

[7] Williams also argues that the trial court improperly reviewed this enumeration of error in its motion for new trial as a claim of ineffective assistance of counsel even though Williams did not challenge the admission of

SE2d 446) (1999) ("If [the appellant] did not intend to acquiesce in the court's ruling, he should have made apparent in some proper way what the testimony would have been, for without this showing this court can not [sic] determine whether injury resulted." (citation and punctuation omitted)). See also *Harris v. State*, 314 Ga. 238, 290 n.82 (875 SE2d 659) (2022) (agreeing with the trial court's conclusion that the appellant had not preserved a claim of error because he did not call the witness to testify at trial); *McKoy v. State*, 303 Ga. 327, 332-334 (2) (812 SE2d 293) (2018) (concluding that the appellant failed to preserve a "claim that the trial court committed reversible error by ruling in limine that [evidence] would be admissible" as a prior inconsistent statement because the appellant "refused to testify on cross-examination and the disputed [evidence was] never admitted"); *McAllister v. State*, 351 Ga. App. 76, 86-87

---

Cruz's guilty plea through a claim of ineffective assistance. The trial court concluded that Williams's failure to proffer Cruz's testimony made the "*Strickland* claim [] incomplete." But any error from the trial court's review of this enumeration as a claim of ineffective assistance of counsel is harmless because the fundamental basis for the conclusion is the same. The record cannot support Williams's claim because Cruz never testified and counsel never proffered what Cruz's testimony would have been, making an analysis of harm (or prejudice) impossible.

(2) (830 SE2d 443) (2019) (concluding that the appellant waived his claim that the trial court erred in denying his motion in limine to limit the cross-examination of an expert witness by failing to call the witness to testify at trial). Without such evidence, our review would be entirely speculative. See *Luce v. United States*, 469 U. S. 38, 42 (III) (105 SCt 460, 83 LE2d 443) (1984) ("Any possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds . . . the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). Therefore, this enumeration fails.

4. Finally, Williams argues that his constitutional right to a speedy trial was violated when he was not brought to retrial for 25 months after remittitur of his case to the superior court following the reversal of his convictions by this Court. The trial court determined that Williams's constitutional speedy-trial right was not violated and denied both a motion for discharge and acquittal that Williams filed three months prior to his trial and Williams's motion

for new trial. In both instances, the trial court reviewed each of the *Barker-Doggett* factors and found that, overall, the factors weighed heavily against Williams due to his failure to assert his speedy trial rights until three months before trial and his failure to demonstrate that he was prejudiced by the delay. See *Barker v. Wingo*, 407 U. S. 514, 530-533 (92 SCt 2182, 22 LE2d 101) (1972); *Doggett v. United States*, 505 U. S. 647, 651 (112 SCt 2686, 120 LE2d 520) (1992)). We see no abuse of the trial court's discretion here.

The United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," U.S. Const. amend. VI.

> Courts examining an alleged denial of the constitutional right to a speedy trial first must consider whether the interval between the defendant's arrest, indictment, or other formal accusation and the trial is sufficiently long so as to be characterized as presumptively prejudicial. If the delay is long enough to invoke the presumption of prejudice, the trial court must balance four factors: (1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for the delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result.

*Cash v. State*, 307 Ga. 510, 513 (2) (837 SE2d 280) (2019) (citing

*Barker v. Wingo*, 407 U. S. 514, 530-533 (92 SCt 2182, 22 LE2d 101)

(1972) and *Doggett v. United States*, 505 U. S. 647, 651 (112 SCt

2686, 120 LE2d 520) (1992)). In this context, "we must accept the

factual findings of the trial court unless they are clearly erroneous."

(Citation and punctuation omitted.) *Henderson v. State*, 310 Ga. 231,

235 (2) (850 SE2d 152) (2020). Moreover, "[t]he trial court's weighing

of each factor and its balancing of all four factors — its ultimate

judgment — are reviewed on appeal only for abuse of discretion."

*State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011). As we

have discussed, "[s]peedy-trial claims require trial courts to engage

in a difficult and sensitive balancing process. This task is committed

principally to the discretion of the trial court, and this Court has a

limited role in reviewing the trial court's decision." (Citations and

punctuation omitted.) *Henderson*, 310 Ga. at 235 (2).

Here, the trial court found that the delay in bringing Williams

to retrial following remittitur of his case from this Court was 25

months and that it was therefore presumptively prejudicial. Neither

party disputes whether the trial court properly calculated the length of delay or whether it properly determined that the delay was presumptively prejudicial. See *Heard v. State*, 295 Ga. 559, 564-565 (2) (d) (761 SE2d 314) (2014) ("[A] delay approaching one year is sufficient in most cases to raise a presumption of prejudice and to warrant a more searching inquiry. . . ." (citation and punctuation omitted)). Williams does, however, challenge some of the trial court's determinations and its overall weighing of the four *Barker-Doggett* factors.

(a) *Length of the Delay.*

Neither party contests that the trial court properly weighed the length of the delay against the State. Even though the trial court determined that the 25-month delay was not uncommonly long due to the extensive preparation required in this case, the trial court still weighed the length of delay against the State. We conclude that this did not constitute an abuse of discretion. See *Taylor v. State*, 312 Ga. 1, 12 (4) (b) (i) (860 SE2d 470) (2021) (determining that the trial court properly weighed a 30-month delay against the State after it

15

determined that the delay was not uncommonly long).

(b) *Reasons for the Delay.*

The trial court weighed the reason for delay differently in its orders on Williams's two motions. In the first order, the trial court weighed this factor slightly against the State because it found that the State failed to provide an adequate reason for the delay and that there were two prosecutors assigned to the case who left the district attorney's office while the case was pending retrial. The trial court noted that in deciding to weigh this factor only slightly against the State, it considered that there were several joint requests for a continuance and that Williams never announced that he was ready for trial.

In its later order denying Williams's motion for new trial, the trial court weighed the reason for delay against Williams because there was an 11-month delay caused by the withdrawal of William's first trial counsel and because of the efforts required to find new counsel for Williams after a conflict of interest arose. The trial court also noted that Williams's initial counsel filed four applications for

16

leave of court. In making its determination, the trial court also considered plea negotiations between the parties but found that they did not weigh against either party and considered that there were several changes in prosecutors.

Williams asserts that the trial court abused its discretion by ultimately weighing this factor against him. He claims that the delay should have been weighed against the State due to its responsibility to bring a defendant to trial. However, "we give deference to the trial court's findings and conclusions unless we find it abused its substantial and broad discretion." *Dillard v. State*, 297 Ga. 756, 760 (4) (778 SE2d 184) (2015) (citing *Heard*, 295 Ga. at 563). This discretion extends to a trial court's weighing of facts in determining to which party certain delays should be attributed. See *Williams v. State*, 277 Ga. 598 (1), 599 (592 SE2d 848) (2004). Here, the 11-month delay in securing conflict counsel supports the trial court's ultimate determination that the reason for delay should weigh against Williams, and we determine that the trial court did not abuse its discretion in weighing this factor against Williams

17

when it denied his motion for new trial. See *Vermont v. Brillon*, 556 U. S. 81, 90 (II) (129 SCt 1283, 173 LE2d 231) (2009) ("Because the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant." (citation and punctuation omitted)).

(c) *Assertion of the Right to a Speedy Trial.*

The trial court weighed Williams's delay in asserting his right to a speedy trial heavily against him. He argues that his delay in asserting his right to speedy trial should not be weighed against him at all (or at least should not weigh against either party) because he "opted, in good faith, to give the Court, the State, and the public defender's office fair opportunity to bring this matter in a timely fashion" due to the "complex procedural posture in this case" and because he asserted his rights "once the delay became egregious. . . ." But Williams did not assert his right to a speedy trial until three months before his trial — around 22 months after remittitur of his case to the superior court following the reversal of his convictions by

18

this Court.

While Williams "was not required to seek a speedy trial at the first available opportunity, it was incumbent upon him to put the State on notice that he preferred to be tried as soon as possible." *Dillard*, 297 Ga. at 761 (4). See also *State v. Porter*, 288 Ga. 524, 529 (2) (c) (3) (705 SE2d 636) (2011) ("Our cases hold that an extended delay in asserting the right to a speedy trial should normally be weighed *heavily* against the defendant." (citations omitted; emphasis in original)). Therefore, it was not an abuse of discretion for the trial court to weigh Williams's failure to assert his right to a speedy trial until three months before trial against him. See *Dillard*, 297 Ga. at 761 (4) (concluding that the trial court properly weighed the third factor against the appellant when he waited until "a mere three months before trial" to assert his right to a speedy trial); *Cash*, 307 Ga. at 517-518 (2) (b) (iii) (identifying no abuse of discretion where the trial court weighed the appellant's assertion of his right to speedy trial against him when he did not assert his right until over a year after his arrest); *Robinson v. State*, 287 Ga. 265, 268 (1)

19

(c) (695 SE2d 201) (2010) (determining that the 16-month delay after arrest in asserting the right to speedy trial weighed against the appellant).

(d) *Prejudice.*

The trial court found that Williams failed to present any evidence that he suffered personally or legally from the delay and therefore weighed this factor against him. Williams asserts this was error because affirmative proof of prejudice was not required and prejudice should have been presumed by the delay. However, while a presumption of prejudice always exists "once the threshold of presumptive prejudice is satisfied[,] . . . the prejudice prong may be weighed against the defendant even in cases of excessive delay." *Cash*, 307 Ga. at 518 (2) (b) (iv).

Here, we cannot say that the trial court abused its discretion by weighing the prejudice factor against Williams because he "failed to establish oppressive pretrial incarceration or anxiety and concern beyond that which necessarily attends confinement" and because he "failed to present any specific evidence that his ability to defend

himself had been impaired." *Ruffin v. State*, 284 Ga. 52, 65 (2) (663 SE2d 189) (2008). Thus, in attempting to establish that his right to speedy trial was violated, Williams cannot rely solely on the presumptive prejudice resulting from the 25-month delay. See *Harris v. State*, 284 Ga. 455, 457 (667 SE2d 361) (2008) (holding that the presumptive prejudice from a five-and-a-half-year delay was insufficient to "carry [his speedy trial claim] without regard to the other *Barker* criteria"); *Cash*, 307 Ga. at 519 (2) (b) (iv) ("The trial court did not abuse its discretion by failing to weigh th[e prejudice] factor in [the appellant's] favor merely because his case had been delayed for 28 months."). Therefore, we see no abuse of discretion in the trial court's weighing of the prejudice factor against Williams. See *Dillard*, 297 Ga. at 761-763 (4) (determining that the prejudice factor "weigh[ed] against [the] appellant" where he "failed to show that the delay interfered with his ability to present evidence which would have strengthened his defense" and "could not point to any harm other than the incarceration itself" (citation omitted)); *Taylor*, 312 Ga. at 14 (4) (b) (iv) (determining that the trial court did not

21

abuse its discretion in weighing the prejudice factor against the appellant when she only "generally assert[ed] that her defense was prejudiced" (citation omitted)).

Given Williams's delay in asserting his right to speedy trial and his failure to present any evidence of prejudice, the trial court did not abuse its discretion in finding that the *Barker-Doggett* factors as a whole weighed against Williams. See *Dillard*, 297 Ga. at 762-763 (4); *Ruffin*, 284 Ga. at 65-66 (3). Accordingly, we see no abuse of the trial court's discretion in its conclusion that the 25-month delay in retrying Williams did not violate his constitutional right to a speedy trial. This enumeration of error fails.

*Judgment affirmed. All the Justices concur.*