## A01A1230. COVINGTON v. THE STATE.
### (555 SE2d 204)

MIKELL, Judge.

Millard Covington was charged with murder, felony murder, and possession of a firearm by a convicted felon. A Fulton County jury convicted him of voluntary manslaughter and possession of a firearm by a convicted felon. Covington was sentenced to fifteen years confinement on the voluntary manslaughter offense and five years on the possession charge to run consecutively. On appeal, Covington seeks the reversal of his conviction and sentence on several grounds. Specifically, he argues that the trial court erred by: (1) instructing the jury that it could reduce the charges of malice murder and felony murder to voluntary manslaughter; (2) allowing the state to elicit testimony from an officer that bolstered the credibility of the eyewitness; and (3) sentencing Covington separately for the possession charge when it could not determine the basis for the jury's verdict. Covington also contends that he was denied effective assistance of counsel. For the reasons stated below, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[1] So viewed, the evidence shows that at approximately 3:30 a.m. on April 6, 1994, Officer David Quinn, Jr. of the Atlanta Police Department was approached by Robert Ponder and Rita Hillis at a gas station. Hillis told him that someone had been shot and was lying in a wooded area. After locating the body, Officer Quinn notified the homicide department. He turned the case over to the homicide officer, Investigator Sheila Cumberworth, once she arrived at the scene.

Investigator Cumberworth testified that the victim was found at 408 Bass Street in Fulton County, in a large lot east of Mike's Body Shop. She did not find any weapons around the outside of the garage or near the body, and there was no indication that there had been a fight or scuffle in the garage. After talking to Hillis and obtaining her

---

[1] (Citation and punctuation omitted.) *Hutchinson v. State*, 232 Ga. App. 368, 369 (501 SE2d 873) (1998).

statement, Investigator Cumberworth secured an arrest warrant for Covington and notified the fugitive squad that Covington had fled the area.

Hillis was the state's sole eyewitness at trial. Hillis testified that on the evening before the shooting, she purchased crack cocaine from the victim, whom she called "Buster." At approximately 11:00 p.m., she, Buster, and Ponder met and began drinking alcohol. After dropping Hillis off on Stewart Avenue, Buster and Ponder returned to pick her up at approximately 2:00 a.m. They went to a crack house to buy more crack cocaine, and when there was none, they continued to drink. Eventually, Hillis bought more crack cocaine, but she decided to go home to smoke it alone because Buster kept begging her for a "hit."

For two weeks before the incident, Hillis had been sleeping in the garage where Covington lived. Buster followed Hillis to the garage. As Covington opened the door, Hillis told Buster that he could not come in. Buster ignored Hillis and continued to beg for a "hit" of crack cocaine. Hillis testified that Covington, who did not know Buster, asked her what was going on and she explained, "He's following me in here, keeps asking me about something I don't have, and I told him he cannot stay." In a nice manner, Covington asked Buster to leave. After Buster ignored him, Covington told Buster that he was going to have to leave, and when Buster did not move, Covington pushed him. As a result, Buster fell onto the ground outside of the garage.

Hillis testified that when Buster walked back into the garage and was standing just inside the entrance, Covington said, "I told you you had to leave. Wait a minute, I'm going to get my stick." In the meantime, Hillis told Buster again that he should leave. As Buster was backing away, Hillis recalled that all she saw was orange fire coming from Covington's gun.

Hillis testified that initially, neither she nor Covington thought that Buster had been shot. They realized that Buster was shot after Covington dragged him outside. Hillis testified that she was absolutely positive that Covington shot Buster and that Buster had not threatened Covington before Covington shot him.

On cross-examination, Hillis admitted that she had been awake for about 24 hours before the shooting. She also testified that before the incident, Buster had been smoking crack for five to six hours, drinking cheap wine, and was "hyper" from the crack cocaine.

Consistent with Hillis' testimony, Covington testified that Buster followed Hillis into the garage. He recalled that Hillis told Buster to leave her alone and to leave the garage. When Covington also told Buster to leave, Buster grabbed his arm and pushed him, then they fought and fell outside of the garage. Covington testified

that he tried to run back into the garage but could not secure the garage door before Buster came back in. Covington realized that there was something in Buster's hand and tried to shoot over him to scare him. Covington testified that he did not realize that he had shot Buster, that he did not intend to kill him, and that he panicked and left the scene after Hillis said she was going to get Buster's brother. Covington was arrested on March 10, 1995.

1. During jury deliberations, the jury asked: "Are counts 1 and 2 linked ges [sic]. Need more clarification. Can you be guilty of count 2 and not guilty of count 1? This is relative to malice aforethought. Is it our option to reduce the count?" After discussing the questions with counsel, the court informed the jury that Counts 1 and 2 were not linked and that a person could be guilty of Count 2, but not Count 1. In response to the question about reducing the count, the court stated: "I assume you mean [by] reduce the count, you mean reduce the malice murder or the felony murder to voluntary manslaughter. Yes, it is your option to reduce those counts, either count to voluntary manslaughter."

Covington argues that the court's response was erroneous because it improperly removed from the jury's consideration the lesser included offenses of involuntary manslaughter, aggravated assault, reckless conduct, simple assault, pointing a gun at another, and simple battery. We disagree.

During its original instructions to the jury, the court properly charged the jury on murder, felony murder, aggravated assault, possession of a firearm by a convicted felon, and voluntary manslaughter. Defense counsel did not request that the jury be charged on any other lesser included offenses. "A trial judge never errs in failing to instruct the jury on a lesser-included offense where there is no written request to so charge."[2] Thus, the court's failure to so charge here does not constitute error.

2. In his next two enumerations of error, Covington contends that he was denied his right to effective assistance of counsel because his trial counsel failed to object to the court's response to the jury question and to request charges on lesser included offenses and elicited testimony from Officer Quinn that bolstered Hillis' testimony. We disagree.

"[I]n order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable

---

[2] (Citation omitted.) *Gadson v. State*, 264 Ga. 280, 281 (2) (444 SE2d 305) (1994).

probability exists that, but for the attorney's errors, there would have been a different outcome at trial."[3] Furthermore,

> a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[4]

"[A] trial court's finding of effectiveness must be upheld unless clearly erroneous."[5]

(a) Covington argues that his counsel was ineffective because he failed to object to the court's response to the jury's inquiry that was discussed in Division 1 of this opinion. Absent some deficiency or impropriety in the charge which was harmful to Covington, trial counsel was not ineffective because of his failure to object.[6] The court's response that the jury could reduce the count to voluntary manslaughter was not deficient or improper as it conformed to the jury charge and the verdict form, and it was adjusted to the evidence in the case.

(b) Covington's argument that his trial counsel was ineffective because he did not request charges on involuntary manslaughter, aggravated assault, reckless conduct, simple assault, pointing a gun at another, or simple battery also fails. Pretermitting the issue of whether Covington's counsel was deficient in his failure to request these charges, Covington must show that "there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's unprofessional errors."[7] In other words, Covington must show that he would not have been convicted of voluntary

---

[3] (Citations omitted.) *Butler v. State*, 273 Ga. 380, 384 (10) (541 SE2d 653) (2001).

[4] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993), citing *Strickland v. Washington*, 466 U. S. 668, 697 (104 SC 2052, 80 LE2d 674) (1984).

[5] (Citation omitted.) *Green v. State*, 240 Ga. App. 650, 653 (3) (523 SE2d 632) (1999).

[6] *Abreu v. State*, 206 Ga. App. 361, 363 (1) (425 SE2d 331) (1992).

[7] (Citation and punctuation omitted.) *Tutton v. State*, 179 Ga. App. 462, 464 (4) (346 SE2d 898) (1986).

manslaughter had the jury had the other offenses to consider. This, he cannot do.

"[Q]ualified jurors under oath are presumed to follow the instructions of the trial court."[8] The jury was charged that "[a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person."[9] Covington admits that he shot the victim. There is no dispute that the victim died because of the gunshot wound inflicted by Covington. There is also evidence that Covington was reacting to the victim's conduct when he shot him. Therefore, the evidence was sufficient to support the jury's verdict that Covington was guilty of voluntary manslaughter. Consequently, Covington was not prejudiced by his trial counsel's failure to request the additional charges.

(c) Lastly, Covington contends that his trial counsel was ineffective because he elicited testimony from Officer Quinn that bolstered Hillis' testimony. Again, we disagree.

During the course of his cross-examination of Officer Quinn, counsel inquired about the aggressive or volatile nature of crack cocaine users. When asked if people who use crack cocaine and alcohol tend to depart from normal character, Officer Quinn asked if he could say something. The following colloquy occurred:

Quinn: If you're a crack head and you do it every day and something serious happens, you sober up in seconds. It's just how it is. You do it every day, but if your mother dies and you been doing crack all day, you're sober.
Counsel: When you say sober, you mean coherent?
Quinn: Coherent, missing no information, understanding everything around you.
Counsel: That's been your hundred percent experience?
Quinn: I would say so.

In his brief, Covington argues that by this line of questioning, defense counsel encouraged Officer Quinn to vouch for Hillis' truthfulness.

During the hearing on the motion for new trial, trial counsel explained that when questioning Officer Quinn, who had already admitted that he was not a toxicology expert, it was his intention to

---

[8] (Citation and punctuation omitted.) *Gomillion v. State*, 236 Ga. App. 14, 19 (3) (d) (512 SE2d 640) (1999).

[9] OCGA § 16-5-2 (a).

show that the officer was not believable. Counsel testified, "I thought that I had discredited him by proving that he would just basically say anything to make his case." When Officer Quinn made the statement about instantly becoming sober, trial counsel testified that once again, he was trying to show that the officer was not believable.

"[A] matter such as the cross-examination of a witness is most often grounded in matters of trial tactics and strategy and, in those instances, provides no basis for finding counsel's performance deficient."[10] Moreover, "[p]articularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result."[11] Trial counsel's tactical strategy was not so clearly erroneous as to be ineffective. Accordingly, this enumeration fails.

3. In his next enumeration of error, Covington argues that the state improperly elicited testimony from Officer Quinn that bolstered the credibility of Hillis. Again, we disagree.

During his direct examination, Officer Quinn testified that he had experience with people who were under the influence of either alcohol, crack cocaine or cocaine as a part of his job. When asked whether Hillis was either extremely high or drunk when he first talked with her, he said that she was not. This is not tantamount to asking Officer Quinn his opinion about the truthfulness of Hillis' testimony, which we agree is prohibited.[12] Instead, the state's questions inquired about Hillis' condition when she informed Officer Quinn of the shooting, which is permissible.[13] Accordingly, this enumeration lacks merit.

4. Finally, Covington contends that the trial court erred in sentencing him on the felon in possession of a firearm offense when it was impossible to determine whether the jury reached the voluntary manslaughter conviction by reducing the malice murder count or the felony murder count. Covington did not raise this argument in his motion for new trial, his amended motion for new trial, or during argument on the motion for new trial. "This Court will not consider issues and grounds for objection, . . . which were not raised and determined in the trial court."[14] Accordingly, this error is waived.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

---

[10] *Butler v. State*, 273 Ga. 380, 385 (10) (b) (541 SE2d 653) (2001).

[11] (Citation and punctuation omitted.) *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

[12] See *Bright v. State*, 238 Ga. App. 876, 880 (4) (520 SE2d 48) (1999).

[13] See *Lawrence v. State*, 157 Ga. App. 264 (2) (277 SE2d 60) (1981).

[14] (Citation and punctuation omitted.) *Couch v. State*, 246 Ga. App. 106, 109 (3) (539 SE2d 609) (2000).

DECIDED OCTOBER 11, 2001.

*Dell Jackson*, for appellant.

*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Bettie-anne C. Hart, Assistant District Attorneys*, for appellee.