**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0159
Joseph Price
v.
The State

On Appeal from the Superior Court of Fulton County
No. 15SC139146

Decided: June 16, 2026

BETHEL, Justice.

Joseph Price was convicted of the malice murder of Terrence Bluett, the aggravated assault and aggravated battery of Ronnie Harris and Jose Noyola, and other related crimes.[1] On appeal, Price argues that the State violated his constitutional right

---

[1] The crimes occurred on November 23, 2013. On November 13, 2015, a Fulton County grand jury indicted Price for participation in criminal street gang activity (Count 1), malice murder (Count 2), seven counts of felony murder based on numerous predicate felonies (Counts 3–9), two counts of criminal attempt to commit armed robbery (Counts 10 and 11), three counts of aggravated assault (Counts 12–14), aggravated battery (Count 15), criminal attempt to purchase marijuana (Count 16), possession of a firearm during the commission of a felony (Count 17), and two counts of possession of a firearm by a convicted felon (Count 18 and 19). The grand jury also indicted Stephen Lowe, Jr., on Counts 1–7 and 10–17.

At Price's October 2017 trial, Lowe testified against Price pursuant to a grant of immunity. The trial court directed a verdict of not guilty on Counts 1, 6, 7, and 16. A jury ultimately found Price guilty of all remaining counts. The trial court sentenced Price to serve life in prison without parole on Count 2. It also sentenced him to 15 years in prison on Counts 10 and 11, concurrent

to a speedy trial. He also argues that his constitutional right to confront the witnesses against him was violated. As we explain below, the trial court made significant errors in assessing Price's speedy trial claim, so we vacate its judgment in part and remand for further proceedings. And in light of that conclusion, we do not address Price's remaining enumeration of error.

1. Price first argues that the delay between his arrest and trial violated his right to a speedy trial under the Sixth Amendment of the United States Constitution.

(a) Police officers arrested Price on February 9, 2015. A Fulton County grand jury indicted him on November 13, 2015. On June 1, 2016, Price filed a "Request for Trial," which read:

> [T]he Defendant … puts all interested parties on notice that he is ready for trial. The Defendant would request that this matter proceed to trial immediately. If this matter is not tried within this term of court or the next, the Defendant would request that the above styled matter be dismissed against him.

The trial court treated the filing as a non-compliant statutory

---

with Count 2; 15 years in prison on Count 14, concurrent with Counts 2, 10, and 11; 15 years in prison on Count 15, concurrent with Count 14; and 15 years in prison on Count 19, consecutive to Count 2. The remaining counts were vacated by operation of law or merged for sentencing purposes.

The record does not reflect what happened with Lowe's charges, and he is not party to this appeal.

On October 26, 2017, Price filed a timely motion for new trial, which he amended through new counsel approximately three years later. After a hearing, the trial court denied the motion, as amended, on September 29, 2023. Price then filed a timely notice of appeal that was amended two years later, and the case was docketed to this Court's term beginning in December 2025.

speedy trial demand[2] and denied the motion. Nearly a year later, on March 7, 2017, Price moved to dismiss his indictment on constitutional speedy trial grounds. The trial court apparently never ruled on the motion, and, after several delays, Price's trial began on October 16, 2017. As this timeline shows, roughly 32 months passed between Price's arrest and the start of his trial.

(b) Courts evaluate constitutional speedy trial claims using the two-part framework established in *Barker v. Wingo*, 407 US 514 (1972), and *Doggett v. United States*, 505 US 647 (1992). The trial court first determines whether the delay at issue "was sufficiently long to be considered presumptively prejudicial." *Kitchens v. State*, 322 Ga. 169, 170 (2025) (quotation marks omitted). A delay longer than one year is considered presumptively prejudicial. Id. For presumptively prejudicial delays, the trial court moves on

---

[2] OCGA § 17-7-171(a) provides:

Any person accused of a capital offense may enter a demand for speedy trial at the term of court at which the indictment is found or at the next succeeding regular term thereafter; or, by special permission of the court, the defendant may at any subsequent term thereafter demand a speedy trial. The demand for speedy trial shall be filed with the clerk of court and served upon the prosecutor and upon the judge to whom the case is assigned or, if the case is not assigned, upon the chief judge of the court in which the case is pending. A demand for trial filed pursuant to this Code section shall be filed as a separate, distinct, and individual document and shall not be a part of any other pleading or document. Such demand shall clearly be titled "Demand for Speedy Trial"; reference this Code section within the pleading; and identify the indictment number or accusation number for which such demand is being made. The demand for speedy trial shall be binding only in the court in which such demand is filed, except where the case is transferred from one court to another without a request from the defendant.

to a four-factor balancing test that examines: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay." Id.

When reviewing a trial court's ruling on a speedy trial claim, we bear in mind that application of the *Barker-Doggett* test is a "difficult and sensitive balancing process" that is "committed principally to the discretion of the trial courts," and "our role as a court of review is a limited one." *Kitchens*, 322 Ga. at 170 (quotation marks omitted). "Thus, this Court accepts the trial court's factual findings unless they are clearly erroneous, and we review the trial court's weighing of each factor, and its ultimate judgment in balancing all four factors, for an abuse of discretion." Id.

> If the trial court significantly misapplies the law or clearly errs in a material factual finding, we will affirm the trial court's exercise of discretion only if we can conclude that, had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment. But if the trial court would still have discretion to reach a different judgment, we remand for the trial court to reweigh the factors and exercise its discretion using the correct factual and legal analysis.

Id. (cleaned up).

(c) When addressing Price's speedy trial claim in its order denying Price's motion for new trial, the trial court first laid out the *Barker-Doggett* framework and concluded that the 32-month delay between Price's arrest and trial was presumptively prejudicial. Next, the trial court examined the reason for the delay. It concluded that the delay was partially attributable to both the

4

State and to Price, the former because of the trial court's backlog of cases and the latter because of Price's trial counsel's series of leaves of absence, ultimately weighing the factor neutrally against both parties. The trial court then assessed Price's assertion of the speedy trial right, concluding that the over two-year delay between Price's arrest and the filing of his motion to dismiss on constitutional speedy trial grounds weighed heavily against Price. Finally, the trial court weighed the prejudice factor against Price upon concluding that Price presented no specific evidence of oppressive pretrial incarceration, anxiety or concern, or an impaired ability to defend himself. And, "weigh[ing] all four factors in the context of" Price's case, the trial court determined that Price's speedy trial right was not violated.

The trial court committed three errors in the process. First, it significantly misapplied the law by "conflat[ing] the distinct analyses of presumptive prejudice and the length of delay" and "fail[ing] to consider whether the delay was uncommonly long." *Kitchens*, 322 Ga. at 172. Second, the trial court abused its discretion in analyzing the reason-for-delay factor by relying on Price's trial counsel's leaves as a primary reason for delay and weighing the factor neutrally between the State and Price. See *Nelson*, 321 Ga. 465–66. Third, the trial court improperly disregarded Price's noncompliant statutory speedy trial demand when analyzing the assertion-of-the-right factor. And we cannot say that the trial court would have had no discretion to accept Price's speedy trial claim had the court applied the correct analysis, so we vacate in part and remand for the trial court to conduct the proper analysis in the first instance. See *Redding v. State*, 318 Ga. 225, 233 (2024).

(i) The trial court first erred in assessing the length-of-delay factor. "Generally, … a trial court measures the delay from

5

the time the constitutional right to a speedy trial attaches, which is the time of arrest or formal accusation or indictment, whichever occurs first, until the date on which the defendant's trial begins." *Kitchens*, 322 Ga. at 171. Separate from the threshold presumptive prejudice analysis, which considers the length of pretrial delay in absolute terms, the length-of-delay factor requires the court to determine whether the delay was uncommonly long and to assign weight to this factor. *Nelson*, 321 Ga. at 464. "The delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case, and a delay may be uncommonly long when the case is not prosecuted with the promptness customary in such cases." *Kitchens*, 322 Ga. at 171 (quotation marks omitted).

Here, the trial court conflated the presumptive prejudice analysis with the length-of-delay factor. See *Kitchens*, 322 Ga. at 172. The trial court's order included a section titled "Length of Delay," but the subsequent analysis concerned only whether the 32-month delay "raise[d] a threshold presumption of prejudice." The trial court correctly calculated the length of delay but did not determine whether that delay was uncommonly long or explicitly assign it any weight. We have consistently said these and similar errors constitute a significant misapplication of the law. See id. (a trial court significantly misapplies the law when it fails to calculate length of delay, conflates presumptive prejudice and length-of-delay analyses, and fails to determine whether delay was uncommonly long); *Nelson*, 321 Ga. at 464 (failure to calculate length of delay, address whether delay was uncommonly long, or assign weight to length-of-delay factor is a significant misapplication of the law); *Redding v. State*, 313 Ga. 730, 735 (2022) (a trial court significantly misapplies the law by failing to expressly calculate length of delay and by conflating the length-of-delay and reasons-for-delay factors). See also *Ruffin v. State*, 284 Ga. 52,

6

56–57 (2008) ("It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question … and … count it again as one of four criteria to be weighed in the balancing process[.]"). As to the length-of-delay factor, there was simply "no exercise of discretion for this Court to review." *Goins v. State*, 306 Ga. 55, 58 (2019).

(ii) Similarly, the trial court abused its direction when it weighed the reason-for-delay factor neutrally against both parties. This factor requires the court to consider "which party was responsible for the delay, whether the delay was intentional, and, if it was intentional, what the motive was for seeking or causing the delay." *Nelson*, 321 Ga. at 465 (quotation marks omitted). "[D]ifferent weights should be assigned to different reasons" for delay. Id. (quotation marks omitted). So, for example, any delay caused by the defense weighs against the defendant; intentional delay by the State to hinder the defense weighs heavily against the State, while unintentional delay—"such as that caused by the prosecuting attorney's mere negligence or the trial court's overcrowded docket"—weighs less heavily against the State. Id. (quotation marks omitted).

The trial court correctly recognized that a crowded docket—which the record suggests was the main reason for delay—must be weighed against the State. See id. But the trial court erroneously cancelled out that weight based on three leave-of-absence blocks that Price's attorney took (generally) around the Thanksgiving, Christmas, and New Year holidays in 2015, 2016, and 2017. While an attorney's leaves of absence can be relevant to the speedy trial analysis, see *Cash v. State*, 307 Ga. 510, 517 (2019), those absences must have affected the defendant's trial date to be relevant to a speedy trial calculation, see *Nelson*,

7

321 Ga. at 465–66. Here, the 2017 absences occurred entirely *after* Price's trial, so they could not have caused any delay between his arrest and trial date. Accordingly, those dates have no bearing whatsoever on the proper speedy trial analysis.

Moreover, leaves of absence are different from continuances. See *Nelson*, 321 Ga. at 465–66 (trial court clearly errs by treating leaves of absence as continuances of trial when record does not show that absences delayed trial). The trial court did not find that the leaves of absence had any effect on the trial date, nor do we find anything in the record to support that.

And the State did not announce ready for trial until January 9, 2017, *after* the majority of Price's attorney's 2015 and 2016–17 absences. That could have left the trial court's crowded docket as the sole supported reason for the 32-month delay between Price's arrest and trial.

So, in neutralizing the delay attributable to the State, the trial court abused its discretion when it relied on leaves of absence that occurred after the defendant's actual trial, that may not have affected the trial date, and which may not have resulted in any continuance occurring before the State first announced ready for trial. See *Nelson*, 321 Ga. at 465–66; *Redding*, 318 Ga. at 229–30 (trial court erroneously determined that both sides requested to delay trial when, in fact, defense never requested to delay trial, even though defense counsel sought leave of absence for vacation). Cf. *Henderson v. State*, 310 Ga. 231, 236–37 (2020) (trial court properly attributed delay to both State and defense where defense counsel's absences covered nearly 35% of the available trial dates between indictment and trial and defense counsel requested two continuances which caused additional four-to-five-month delay). On remand, the trial court should determine whether Price's attorney's leaves of absence had any effect on Price's trial date and

reweigh this factor.

(iii) The trial court also abused its discretion in weighing the assertion-of-the-right factor. This factor considers "whether the defendant asserted the right to a speedy trial in due course." *Nelson*, 321 Ga. at 466 (quotation marks omitted). It focuses on the "timing, form, and vigor of the accused's demands to be tried immediately." Id. (quotation marks omitted). And while an accused "need not demand a trial at the first available opportunity, his failure to assert his right with reasonable promptness will ordinarily weigh heavily against him." Id. (quotation marks omitted).

Here, the trial court weighed the assertion-of-the-right factor heavily against Price because of the 25-month delay between Price's arrest and the filing of his motion to dismiss on constitutional speedy trial grounds. Price claims that the trial court erroneously based its assertion-of-the-right determination on the timing of his motion to dismiss rather than his "Request for Trial" filed 16 months after his arrest.

Price is correct. The trial court incorrectly treated Price's noncompliant statutory speedy trial demand as immaterial to the assertion-of-the-right analysis, concluding that "filing of a demand for a jury trial does not also invoke a defendant's constitutional right to a speedy trial." True, Price's "Request for Trial" did not comply with the requirements for a statutory speedy trial demand, see OCGA § 17-7-171(a), but a noncompliant statutory speedy trial demand is not *irrelevant* to the assertion-of-the-right factor. This factor "requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately." *Cash*, 307 Ga. at 517. And those demands are not limited to explicit constitutional demands or to compliant statutory demands;

9

they can include noncompliant statutory demands. See *Davis*, 315 Ga. at 258. The trial court should not have entirely discounted Price's noncompliant statutory demand when analyzing this factor.

That does not mean that a noncompliant statutory demand — especially one filed 16 months after arrest — is entitled to great weight in a defendant's favor. But it is a relevant data point when conducting the requisite "close examination" of a case's procedural history. See *Cash*, 307 Ga. at 517–18 (noting that defendant "never filed a statutory demand"). So the trial court abused its discretion when it completely disregarded Price's noncompliant statutory speedy trial demand while analyzing the assertion-of-the-right factor. On remand, the trial court should take that demand into account when analyzing this factor, though we reemphasize that we take no position on whether the noncompliant demand must be weighed heavily in Price's favor, or even in his favor at all. See *Wilkie v. State*, 290 Ga. 450, 453 (2012) (noting that 16-month delay in asserting speedy trial right is "significant … in itself"). We conclude only that it is relevant to the "timing, form, and vigor" of Price's assertion of his speedy trial rights and should have been considered by the trial court. *Cash*, 307 Ga. at 517.

(iv) But we see no error or abuse of discretion in the trial court's analysis of the prejudice factor, which it also weighed against Price. There are three relevant types of prejudice in assessing whether a defendant has "suffered prejudice from a delay in bringing his case to trial": (1) "oppressive pretrial incarceration," (2) "anxiety and concern of the defendant," and (3) "impairment of the accused's ability to defend against the charges due to dimming memories and loss of exculpatory evidence." *Nelson*, 321

10

Ga. at 467 (quotation marks omitted). The first two types of prejudice require the defendant to "introduce evidence of oppressive pretrial incarceration or anxiety and concern that goes beyond that which necessarily attends confinement in a penal institution." Id. (quotation marks omitted).

Price concedes that he has presented no evidence of unique hardship from pretrial incarceration. He instead argues that his defense was prejudiced by the unavailability of witness Keenan Higgins. Price claims Higgins's testimony would have undercut the testimony of Ronnie Harris, one of the victims who identified Price as the assailant, by showing that Harris identified Price only after hearing of Price's involvement from Higgins. While it appears that Higgins could not be located to testify at trial, and while Price's attorney testified at the motion for new trial hearing that Higgins was available at the time Price filed his June 2016 request for an immediate trial, it does not appear that Higgins's absence at trial affected Price's defense. As Price's trial counsel conceded, Price fully cross-examined Harris about his identification of Price, including the possibility that his identification was improperly influenced by information from third parties. It is therefore doubtful that Higgins would have provided information that materially helped Price's defense. Higgins's absence did not affect Price's ability to assert his misidentification defense, so Price has not shown prejudice. See *Salahuddin*, 277 Ga. at 563 (weighing prejudice against defendant when alleged loss of witness did not prevent defendant from asserting preferred defense). The trial court did not abuse its discretion or commit any clear error in weighing this factor.

(d) As noted above, the trial court committed three errors: it significantly misapplied the law in analyzing the length-of-de-

lay factor, it abused its discretion by weighing the reason-for-delay factor neutrally, and it completely disregarded Price's noncompliant speedy trial demand when evaluating the assertion-of-the-right factor. So we can affirm the trial court's ultimate exercise of discretion—rejecting Price's speedy trial claim—only if we can conclude that, "had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment." *Kitchens*, 322 Ga. at 170. And we cannot conclude that, had the trial court analyzed Price's claim correctly, it "necessarily would have ruled that there was no violation of the constitutional right to a speedy trial." Id. at 178. Under the correct analysis, the trial court may well have weighed the length-of-delay and reason-for-delay factors against the State, and it may have weighed the assertion-of-the-right factor less heavily against Price. We cannot say how that balance would bear on the trial court's ultimate determination because it is "not the role of an appellate court to weigh the *Barker* factors in the first instance." *Nelson*, 321 Ga. at 466. So we vacate the trial court's judgment as to Price's speedy trial claim and we remand the case for the trial court to "address [that] claim in a manner consistent with this opinion." *Kitchens*, 322 Ga. at 178–79 (collecting cases).[3] That includes distinguishing the presumptive prejudice analysis from the length-of-delay factor, assigning weight to the latter, reevaluating the reason-for-delay factor without erroneous fact findings, and considering the significance of the noncompliant statutory speedy trial demand. See *Nelson*, 321 Ga. at 469. But, as our opinion makes clear, the trial court's assessment of the

---

[3] Given this disposition, we need not review Price's Confrontation Clause claim. But if the trial court again denies Price's speedy trial claim on remand, Price could raise the Confrontation Clause claim in a subsequent appeal.

12

prejudice factor was within its discretion and need not be revisited.

*Judgment vacated in part and case remanded. All the Justices concur.*